IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT TYRONE COOPER,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br>    Defendant. | CIVIL ACTION<br>No. 10-1694 |

**RUFE, J.**                                                                                                       January 26, 2011

## MEMORANDUM OPINION AND ORDER

Plaintiff Lamont Tyrone Cooper filed this action pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income benefits and Disability Insurance Benefits under Title II and Title XVI of the Social Security Act. Cooper seeks reversal of the Commissioner's decision on grounds that the Administrative Law Judge's ("ALJ") finding that Cooper is not disabled was not based on substantial evidence because the ALJ failed to consider timely-submitted medical evidence of Cooper's disability. In the alternative, Cooper seeks remand to a different ALJ. The Commissioner argues that the denial was based on substantial evidence and that the evidence the ALJ did not consider was submitted after the decision was issued, duplicated other evidence, and, regardless, would not have altered the outcome.

Magistrate Judge Timothy R. Rice issued a Report and Recommendation ("R&R") finding the ALJ's decision was not based on substantial evidence and recommending that this Court remand the Commissioner's final decision for consideration of all relevant evidence and

1

augmentation of the administrative record.[1] No objections were filed. Upon this Court's thorough review of the record and the Parties' submissions, and its full consideration of the legal issues discussed in the R&R,[2] it will approve and adopt the Report and Recommendation and remand for further consideration consistent with this opinion and the R&R.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

In May 2007, Cooper applied to the Social Security Administration ("SSA") for both Supplemental Security Income benefits and Disability Insurance Benefits. Cooper claimed several disabling impairments: asthma, hypertension, bipolar disorder with auditory and visual hallucinations, and residual limitations from a December 2007 stroke and a December 2008 arm fracture. Cooper alleged an onset date of December 12, 2007.[3]

After his application was denied in January 2008, Cooper timely sought a hearing before an ALJ. Cooper was initially unrepresented, and the ALJ continued the hearing twice—once to give Cooper time to retain counsel and again apparently at the request of Cooper's attorney.[4] The hearing was ultimately held on March 9, 2009.

During the March 9 hearing, Cooper's attorney noted that he had been unable to obtain Cooper's medical records from his most recent mental health care provider, COMHAR, in part because he could not reach Cooper—who, he claimed, was effectively homeless—to obtain his

---

[1] R&R at 1–2.

[2] Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

[3] In his initial application, Cooper asserted an onset date of June 2, 2006 but amended that date to December 12, 2007 during the March 9, 2009 hearing before the ALJ. R. at 29, 145. Cooper also originally claimed only bi-polar disorder, manic depression, hallucinations and asthma. R. at 145.

[4] R. at 26.

2

written consent to release them.⁵ Cooper's attorney, noting that he could execute the consent forms that day because Cooper was present at the hearing, asked to "have a chance to get those records."⁶ Despite this explanation, the ALJ declined to keep the record open, noting the prior continuances and declaring that he could see no reason why future efforts to obtain the records would be more successful than past efforts.⁷ The ALJ did commit, however, that he would consider any new evidence submitted "before a decision goes out."⁸

On March 17, 2009, eight days after the hearing, Cooper's attorney faxed the COMHAR psychiatric treatment records to the ALJ.⁹ Both the ALJ's Decision and Notice of Decision are dated March 19, 2009,¹⁰ but the envelope containing the decision mailed to Cooper's attorney was postmarked March 17 and stamped "received" by his law office on March 18.¹¹ In that Decision, the ALJ applied the five-step sequential evaluation process¹² and found that some of

---

⁵ R. at 25–26.

⁶ R. at 26. The Commissioner contends that Cooper did not request that the Record be held open for submission of additional medical records. Def.'s Resp. to Req. for Review at 6. It is clear from the hearing transcript, however, that Cooper's attorney was requesting precisely that, and that the ALJ similarly interpreted the request in noting that the Record was not closed at that stage but that he did not see how "holding the record open [was] going to make any difference." R. at 26–27.

⁷ R. at 26–27.

⁸ R. at 27.

⁹ Pl.'s Request for Review at 2 & Ex. A. These medical records appear in the Record as Exhibits 13F–15F.

¹⁰ R. at 9 & 22.

¹¹ Pl.'s Br. & Statement of the Issues at 2 & Exs. A & B.

¹² Under the Social Security Act, a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2002).

 The Commissioner applies a five-step sequential process to determine disability: (1) the claimant must establish that he is not currently engaging in substantial gainful activity; (2) the claimant must establish that he suffers from a severe impairment, and if he cannot, the process ends there with a finding that the claimant is not disabled; (3) if the impairment is severe, then the claimant may

Cooper's asserted impairments (stroke & arm fracture) were not severe, and that of the impairments the ALJ found were severe (asthma, hypertension and bipolar disorder) none met or equaled impairments enumerated by 20 C.F.R. Part 404, Subpart P, Appendix I ("Listed Impairments") that would permit a finding of *per se* disability.[13] After finding Cooper could not return to his prior line of work and determining his Residual Functional Capacity ("RFC"), the ALJ credited the testimony of a vocational expert that jobs exist in significant numbers in the national economy that Cooper could perform despite his impairments.[14] Following the ALJ's decision, Cooper timely sought review by the SSA Appeals Council, which declined to review the decision.[15] The COMHAR records were identified as Exhibits 13F, 14F, and 15F in the Record on appeal.[16] Cooper then filed the pending complaint in this Court.

## II.     STANDARD OF REVIEW

A court reviewing a Social Security case must base its decision on the record of the administrative proceedings and the pleadings of the parties.[17] The court's review of legal issues

---

demonstrate that his disability meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listed Impairments"), for a finding of *per se* disability and entitlement to benefits, and the evaluation process ends there; (4) if the impairment is severe but the claimant does not satisfy step three, then he must establish that he does not have sufficient residual functional capacity—the claimant's abilities despite the limitations imposed by his impairments; and (5) if he does so, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national. Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002); 20 C.F.R. 416.920(a)–(g).

[13] Although the ALJ's opinion concludes that "the claimant does not have a . . . combination of impairments that meets or medically equals one of the listed impairments," R. at 15, it does not appear that he conducted the analysis as required by 20 C.F.R. § 404.1526(b). Cooper does not, however, challenge the decision on that ground.

[14] R. at 21–22.

[15] R. at 1–4.

[16] R. at 4.

[17] 42 U.S.C. § 405(g).

4

is plenary, but its factual review is limited.[18] The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[19] For these purposes, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20] It is more than a mere scintilla, but requires less than a preponderance of the evidence.[21] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[22]

A district court must review *de novo* those portions of a magistrate judge's Report and Recommendation to which a party has objected.[23] A court may in its discretion "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[24]

## III. DISCUSSION

The dispute here centers on whether Cooper submitted the post-hearing COMHAR psychiatric treatment records before the ALJ issued his decision, obligating him to consider that evidence and explain why it was or was not credited. The COMHAR records take on particular importance because of the ALJ's emphasis on the limited objective medical evidence of Cooper's mental illness and resulting limitations. Though Cooper's attorney asked for the

---

[18] Schaudeck v. Comm'r of Soc. Security, 181 F.3d 429, 431 (3d Cir. 1999).

[19] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[20] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U. S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[21] See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[22] Fargnoli, 247 F.3d at 38.

[23] 28 U.S.C. § 636(b)(1)(c).

[24] Id.

opportunity to submit those specific records, the ALJ declined to hold the record open. The factual ambiguities now presented to this Court—and which lead this Court to conclude remand is necessary—could have been avoided by simply deferring decision for a reasonable period of time to allow Cooper to submit his records.

Although the ALJ found that Cooper's bipolar disorder was a severe impairment,[25] he found it did not meet or equal the criteria for Affective Disorders in Section 12.04 of the Listed Impairments, or sufficiently limit him such that he could not engage in substantial gainful activity, largely because there was no objective medical evidence corroborating either Cooper's testimony regarding the severity of his mental illness or the consultative psychological examiner's assessment of his limitations.[26]

Cooper testified that he had undergone regular treatment for his mental illness for the past four or five months preceding the hearing, seeing a therapist every two weeks and a psychiatrist once a month.[27] He testified that he hears voices every two days despite his medication, cannot cope with people, and suffers from persistent depression and memory problems.[28] Cooper also testified that he alternately lives with either his mother or girlfriend who perform the household chores, though he sometimes does the shopping and takes public transportation.[29] Cooper's girlfriend, Yolanda Jackson, testified that he has difficulty with anger and concentration, "hollers & screams," cannot get along with people, and has hallucinations.[30]

---

[25] See 20 C.F.R. §§ 404.1520, 416.920.

[26] R. at 16–20.

[27] R. at 18, 35.

[28] R. at 18–19, 36–37.

[29] R. at 42.

[30] R. at 19, 50–51.

In rejecting this testimonial evidence, the ALJ's decision repeatedly noted the lack of any medical records to support Cooper's claims of hallucinations and other severe limitations resulting from his disorder and treatment thereof.[31] He also found that Cooper's arm fracture—which Cooper claimed required a plate and two pins to repair[32]—did not impose any limitations because there was no objective medical evidence to support a finding that the break occurred.[33]

The ALJ also considered the report of an independent psychological consultative examiner who reported that Cooper had been hospitalized for a psychiatric event, and found Cooper suffered from limited judgment, and had marked limitation in his ability to: (1) make judgments on simple work related decisions; (2) carry out detailed instructions; (3) interact appropriately with co-workers; (4) respond appropriately to work pressures in a usual work setting; and (5) respond appropriately to change in a routine work setting.[34] The ALJ gave little weight to these findings because the examiner was not Cooper's treating physician and at least some of the findings were based largely on Cooper's self-presentation and were uncorroborated by objective medical evidence.[35]

The COMHAR psychiatric treatment records faxed to the ALJ on March 17 document regular treatment of Cooper's bipolar disorder from September 2008 to February 2009. They include a "Two-part Comprehensive Biopsychosocial Evaluation" in September and October 2008, an Outpatient Treatment Plan from September 2008, and regular clinical progress notes

---

[31] R&R at 8; R. at 19.

[32] R. at 38–39.

[33] R. at 19.

[34] R. at 250.

[35] R. at 16.

and medication assessments by Cooper's psychiatrist spanning the four-month period.[36] The records address almost exclusively the treatment (including counseling and medication) of Cooper's bipolar disorder, and make repeated reference to his auditory and visual hallucinations. The treatment notes identify Cooper's "barriers" as including anger, poor communications skills, lack of impulse control, and note his poor attention span, and poor judgment.[37] Cooper's physician prescribed risperidone and hydroxyzine pamoate for "treatment of bipolar disorder," noting that Cooper's "most recent episode" was "severe with psychotic features," and that Cooper was depressed.[38] The treatment plan recommended weekly therapy sessions and monthly medication management meetings with a psychiatrist to decrease his symptoms.[39] The notes indicated not only that Cooper's bipolar disorder appeared to be "symptomatic," but also that he appeared "paranoid."[40] In addition, one of the COMHAR medication assessment reports from late November 2008 notes that Cooper arrived for treatment with his forearm in a cast due to a fractured elbow, and included as part of a treatment plan direction to "get [his] elbow treated."[41]

The Commissioner insists that the COMHAR records were submitted post-decision; Cooper insists the opposite is true.[42] Because the COMHAR records were faxed on March 17th and the ALJ's decision was postmarked on the 17th, received on the 18th, but dated the 19th,

---

[36] R. at 322–34, 379–87, 315–16, 317–21 & 335–45.

[37] R.at 316, 282 & 284.

[38] R. at 336.

[39] R. at 301 & 303.

[40] R. at 302.

[41] R. at 336 & 346.

[42] Def.'s Resp. at 4–6; Pl.'s Br. & Statement of the Issues at 2.

8

Magistrate Judge Rice concluded it was unclear whether the ALJ received the medical evidence prior to issuing his decision. Accordingly, he proceeded on the assumption that the COMHAR records were received prior to the ALJ's decision,[43] the only proper approach under the circumstances. The ALJ chose to date his decision March 19, and this Court cannot know whether the mailing of a copy to Cooper's counsel prior to that date was intentional or simply error. If the decision was rendered on the 17th, this Court cannot likewise determine whether it was finalized before or after the ALJ received Cooper's medical records that day. Accordingly, this Court finds that the date the decision was issued was to be the date on the face of the written decision. Considerations of equity support this presumption. The ALJ was on notice of both Cooper's intent to submit medical records, given that the obstacle of consent was removed, and of the importance of those records. His refusal to hold the record open is contrary to the SSA's own guidance suggesting that the Record be held open post-hearing, subject to time limits, when requested by a claimant,[44] and to the ALJ's obligation to develop the record fully.[45] Cooper's attorney offered a reasonable explanation for his inability to provide the records prior to the hearing[46] and acted promptly in providing the records only six business days after the hearing.

---

[43] R&R at 10 n.12.

[44] R&R at 2 n.1 (citing Soc. Sec. Admin. Office of Disability Adjudication & Review, Hearings, Appeals & Litigation Law Manual Vol. I, § 2-7-20 ("When a claimant or representative requests time to submit evidence or written arguments after the hearing, the ALJ must set a time limit for the post-hearing actions to be completed and inform them that if the material is not received within the time limit, absent a showing of good cause to extend the time, the ALJ will issue a decision without the material.")).

[45] Cf. Hamm v. Astrue, No. 08-5010, 2009 WL 2222799, at *7 (D.N.J. July 22, 2009) ("It is the ALJ's duty to investigate facts and develop arguments both for and against granting benefits. . . . .[T]he Third Circuit too has emphasized the ALJ's obligation to develop the record fully.") (citing Sims v. Apfel, 530 U.S. 103, 110–11 (2000)).

The ALJ's obligation "'is equally applicable where lawyers are handling the case.'" Id. (quoting Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir.2005)).

[46] Cooper's attorney noted he was unable to reach Cooper because of his lack of permanent residence. R. at 26. This does not seem unlikely, given that Cooper himself told the ALJ in September 2008 that he no longer had a current phone number. R. at 72.

And, as the magistrate judge correctly noted, in Social Security cases, "leniency [should] be shown in establishing the claimant's disability" and the Secretary's responsibility to rebut an alleged disability "[should] be strictly construed."[47] Here, given the ambiguities regarding the date the decision was issued—something entirely within the control of the Commissioner—the Commissioner has not successfully rebutted Cooper's assertion that the evidence was timely submitted. Accordingly, the COMHAR records are properly considered as timely-submitted pre-decisional evidence.[48]

Because the evidence was timely submitted, the ALJ was obligated to explicitly consider it in rendering his decision and explain why he declined to credit it.[49] Although the ALJ asserted that he considered "all the evidence and testimony of record, including exhibits of record not specifically cited in the opinion,"[50] he did not append a list identifying which exhibits were included in the record he considered. And the decision itself makes clear that he gave no consideration to the COMHAR medical records. His decision never references any of the

---

[47] Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (citing Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)) (alterations in original) (quotations omitted).

[48] Even if this Court concluded the evidence was submitted *after* the decision was rendered, i.e., was "new evidence," the Commissioner could not avoid remand. This Court may remand for "new evidence" under 42 U.S.C. § 405(g) if the evidence to be considered is both "new" and "material," and there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." See Szubak v. Sec'y of Dep't of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (citing 42 U.S.C. § 405(g) (1982)). Evidence is new if it is non-cumulative of other evidence in the Record. Id. It is material if it relates to the relevant period and creates a "reasonable possibility" that it could change the decision. Id. For the reasons stated *infra,* the COMHAR records are not duplicative of other evidence in the Record. They are material because, as noted in the R&R, they may alter the outcome at multiple steps in the five-step process. See R&R at 12. And there would be good cause for Cooper's failure to submit it prior to the decision because Cooper's attorney was clearly seeking leave to submit it and made clear that the documents related to the critical issue of Cooper's recent psychiatric treatment. See Hamm, 2009 WL 2222799 at *7.

[49] Adorno v. Shalala, 40 F.3d 43, 47–48 (3d Cir. 1994).

[50] R. at 13.

10

COMHAR medical records documenting the treatment of Cooper's bi-polar disease and is replete with concern about the lack of any corroborating evidence regarding the severity of Cooper's bi-polar disorder and the treatment thereof. The absence of such evidence appears to have been critical to the ALJ's conclusion regarding the severity of the impairment and the limitations it imposed.[51] For example, the ALJ concluded that:

> Although the claimant has asserted that he also exhibits significant psychological impairments, the totality of the evidence fails to support the existence of any significant pathology capable of producing such severe and debilitating limitations as alleged by the claimant. *No* records have been submitted which support any disabling psychological impairment and there is *nothing* to support the claimant's allegations of ongoing hallucinations.[52]

Had the ALJ considered the COMHAR records, he could not have reasonably drawn that conclusion. His failure to do so requires remand.

The Commissioner asserts that the ALJ considered "Exhibit 12"—an incomplete set of COMHAR medical records—because it was made part of the Record prior to appeal.[53] The

---

[51] See, e.g., R. at 15 ("Although the claimant also testified that he broke his left elbow in December 2008, there are no medical records of this disorder); 16 (though "claimant testified that he has been treated for bipolar disorder for the past four or five months. . . .[and] sees the therapist every two weeks and the psychiatrist once a month. . . . there is no evidence of this treatment); 16 ("The undersigned does not find the consultative examiners's assessment persuasive in view of the fact that she is not a treating source and there are no treatment records to support the degree of limitation found."); 17 ("The Administrative Law Judge finds that the evidence does not show that the claimant has ever exhibited episodes of decompensation."); 19 ("The record fails to provide any objective medical evidence that the claimant's impairments are as severe as his hearing testimony indicates."); 19 ("Although the claimant testified that he recently broke his left elbow, no evidence has been submitted to corroborate his statements . . . ."); 19 ("To the extent that the claimant alleges being totally precluded from work-related activities, these subjective complaints regarding the severity of limitations caused by his impairments are considered not fully credible and not supported by the medical evidence."); 20 ("Little weight has been given to the opinion if [sic] the psychological examiner which is unsupported by any medical evidence. It is clear that the examiner's assessment was based on the claimant's subjective complaints, which are not supported by the record . . . .").

[52] R. at 19 (emphasis added).

[53] It is unclear when Exhibit 12F was made part of the Record: only Exhibits 1F–11F were marked as exhibits during the hearing, R. at 25, and the SSA Appeals Council added the faxed records to the Record as Exhibits 13F, 14F and 15F, R&R at 5 n.7; R. at 4. Thus Exhibit 12F was clearly appended at some point prior to the internal appeal; when that occurred, however, is unknown.

Commissioner also asserts that Exhibit 14F merely duplicates Exhibit 12F, and that Cooper hasn't shown that any non-duplicative evidence in the additional exhibits is material.[54] The Commissioner is incorrect. Exhibit 14F includes clinical progress notes not included in exhibit 12F.[55] This information documents Cooper's psychiatric treatment and is clearly material to his claim.[56] This is particularly so given: (1) the ALJ's emphasis on the lack of any objective medical evidence regarding the severity and treatment of Cooper's mental illness; and (2) the records are those of treating psychologists and psychiatrists, which are given particular weight in these proceedings.[57] In any event, even if the ALJ considered the COMHAR records, his failure to discuss them and explain why he chose not to credit the information was reversible error.[58]

Finally, the Court concludes that it should not make an independent determination of disability on this record because it has not been fully developed.[59] The ALJ should first conduct the five-step sequential process in light of all the evidence, including the complete set of COMHAR records. And because Cooper has not presented any facts suggesting the ALJ here

---

[54] Def.'s Resp. at 3 & 7.

[55] See, e.g., R. at 358–60, 366–68, 376–78 (progress notes from 11/24/08, 12/22/08, and 2/24/09 included in Exhibit 14F, but not Exhibit 12F).

[56] Magistrate Judge Rice described in precise detail how consideration of the post-hearing, pre-decisional evidence could change the ALJ's analyses at different steps in the sequential process, and the Court need not repeat that discussion here.

[57] See, e.g., Adorno, 40 F.3d at 47; Morales v. Apfel, 225 F.3d 310, 317, 318 (3d Cir. 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight . . . .").

[58] Adorno, 40 F.3d at 47–48 (The Secretary may properly accept some parts of the medical evidence and reject other parts, but . . . must consider all the evidence and give some reason for discounting the evidence [rejected].") (citing Stewart v. Sec'y of Health Educ. & Welfare of the U.S., 714 F.2d 287, 290 (3d Cir.1983)).

[59] See Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986).

was biased or not impartial,[60] beyond a generic assertion of the need for impartiality going forward,[61] the Court declines Cooper's invitation to reassign this matter.

## IV. CONCLUSION

For the foregoing reasons and those set forth in the Report and Recommendation, the Court approves and adopts the R&R and will remand for further consideration. An appropriate order follows.

---

[60] An ALJ should not preside over a hearing "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. §§ 404.940, 416.1440; see also Ventura v. Shalala, 55 F.3d 900, 903 (3d Cir. 1995) ("The right to an unbiased judge is particularly important because of the active role played by the ALJ's in social security cases.").

[61] Pl.'s Br. and Statement of the Issues at 4 ("Plaintiff hereby requests that his matter be heard by an ALJ at the Philadelphia Hearing Office or by the President ALJ of the Philadelphia-East Hearing Office in order to ensure the impartiality of any future adjudication.").